IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WILLIAM F. WOLDMAN,

     Plaintiff,

vs.                                                                                    Case No. 1:25-CV-00159 DHU/JHR

KINDER MORGAN, INC., and
KINDER MORGAN KEYSTONE
GAS STORAGE, LLC.,

     Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Kinder Morgan, Inc. and Kinder Morgan Keystone Gas Storage, LLC's Motion to Dismiss Class Action Complaint. Doc. 10. Plaintiff filed a response, Doc. 26, and Defendants replied, Doc. 29. The Court heard oral argument on November 19, 2025. *See* Doc. 35. After carefully considering Defendants' motion, the attendant briefs, and being fully advised of the premises, the Court concludes that the Motion will be **DENIED** in part and **GRANTED** in part.

### I.
### FACTUAL BACKGROUND

This case stems from events that unfolded for New Mexico Gas Company customers following an extraordinary increase in the cost of natural gas after Winter Storm Uri in February 2021. This is a class action lawsuit brought by Plaintiff William Woldman ("Plaintiff"), on behalf of natural gas consumers, against Kinder Morgan, Inc. ("Kinder Morgan" or "KMI"), one of the largest energy transportation companies in North America, and its affiliate Kinder Morgan Keystone Gas Storage, LLC ("Keystone" or "KGS"). Doc. 1 at 1. As Plaintiff alleges, Keystone owns a natural gas storage facility in Texas, which New Mexico Gas Company ("NMGC") leases

out for storing gas for New Mexico customers. *Id.* Plaintiff alleges violations of the New Mexico Unfair Trade Practices Act ("NMUPA"), tortious acts under New Mexico common law, and unjust enrichment arising from Defendants' conduct in anticipation of and during Winter Storm Uri. Doc. 1 at 2, 27-36.

As background, the NMGC, the largest natural gas utility in New Mexico serving over 500,000 customers statewide, follows the pattern of buying gas on warmer days at low cost and injecting it into storage for later use. *Id.* at 2. When cold weather hits, NMGC then withdraws its previously purchased low-cost gas from storage, normally providing customers with a reliable and low-cost source of gas. *Id.* Although NMGC retains ownership of the gas when it is stored at the Keystone facility, Kinder Morgan controls access to it. *Id.*

In the weeks before Winter Storm Uri struck in February 2021, Kinder Morgan cut into NMGC's storage inventory, and, as alleged by Plaintiff, did so to profit itself and other gas traders and marketers. *Id.* Plaintiff alleges that before and during Winter Storm Uri, Keystone and Kinder Morgan unlawfully removed and otherwise withheld billions of cubic feet of gas, including NMGC's gas, from access. *Id.* at 3. During the storm, the putative class was deprived of a vast inventory of low-cost gas that NMGC and its customers had already paid for. *Id.* Consequently, NMGC was forced to purchase replacement gas at record-high prices. *Id.* Over the six-day brunt of Uri, NMGC paid over $100 million for needed gas supply, roughly equivalent to NMGC's total cost of gas in 2020. *Id.*

Ultimately, under a cost recovery mechanism called the Purchased Gas Adjustment Clause ("PGAC"),[1] the higher cost of the natural gas was paid for by residential and business customers

---

[1] As explained by Plaintiff, under New Mexico law, the NMGC recovers the cost of gas from its customers monthly under a PGAC. Doc. 1 at 8-9. Fuel costs, such as gas supply costs recovered through a PGAC, are pass-through costs with no markup or markdown by NMGC. *Id.*

of the NMGC, and NMGC was fully reimbursed for the extraordinary increase in costs and other related expenses incurred during Winter Storm Uri. *Id.* Plaintiff alleges that these costs arose largely because of Defendants' unlawful conduct, making Defendants liable for a substantial portion of the losses that resulted from the deception and other wrongful acts alleged. *Id.*

Defendants have moved this Court to dismiss the Class Action Complaint filed by Plaintiff on any of six bases: lack of standing, improper venue, issue preclusion, the filed-rate doctrine, statute of limitations, and failure to state a claim. *See* Doc. 10. For the reasons stated below, the Court will deny Defendants' motion on five of the six bases presented, but will grant, in part, Defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6).

## II.
## LEGAL STANDARDS

### A. Rule 12(b)(1)

Motions to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). On a facial attack, the Court presumes all of the allegations contained in the complaint to be true. *Id.*

### B. Rule 12(b)(3)

Rule 12(b)(3) authorizes a court to dismiss a complaint for improper venue. *See* FED. R. CIV. P. 12(b)(3). In a federal civil action, venue is proper in:

> (1) a judicial district where any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

3

28 U.S.C. § 1391(b). A plaintiff bears the burden of proving proper venue. *See Ben-Trei Overseas, L.L.C. v. Gerdau Ameristeel US, Inc.*, No. 09-CV-153-TCK-TLW, 2010 WL 582205 (N.D. Okla. Feb. 10, 2010) (citing *Pierce v. Shorty Small's of Branson Inc.*, 137 F.3d 1190, 1192 (10th Cir. 1998)) (additional citation omitted).

### C.  Rule 12(b)(6)

Rule 12(b)(6) allows for the dismissal of a complaint where the plaintiff has failed to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006) (internal citation omitted). In considering dismissal under Rule 12(b)(6), the Court will "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

A complaint will survive a Rule 12(b)(6) motion if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). In assessing the plausibility of a claim,

> we look to the elements of the particular cause of action, keeping in mind that the Rule 12(b)(6) standard [does not] require a plaintiff to set forth a prima facie case for each element. The nature and specificity of the allegations required to state a plausible claim will vary based on context. But mere labels and conclusions and a formulaic recitation of the elements of a cause of action will not suffice; a plaintiff must offer specific factual allegations to support each claim.

*Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (internal quotation marks and citations omitted). "Thus, a claim is facially plausible if the plaintiff has pled factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

4

## III.
## DISCUSSION

Defendants argue that dismissal is warranted under any of six legal principles: lack of standing, the statute of limitations, improper venue, issue preclusion, the filed-rate doctrine, and failure to state a claim. The Court will begin its analysis with the issue of standing.

### A. Standing

#### 1. **Plaintiff Has Established Article III Standing.**

The first issue before the Court is whether Plaintiff has established Article III standing. Doc. 10 at 16. "Article III of the Constitution requires a plaintiff have standing to sue, meaning [the plaintiff] has incurred (or will incur) (1) 'an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Shields v. Pro. Bureau of Collections of Md., Inc.*, 55 F.4th 823, 827 (10th Cir. 2022) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016)).

The fairly traceable element of standing requires "a causal connection between the injury and the conduct complained of—the injury has to be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42, 96 S. Ct. 1917, 1926, 48 L. Ed. 2d 450 (1976) (citation modified)). This "causation requirement demands 'something less than the concept of "proximate cause." '" *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005) (quoting *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003)). This means "less than a direct relation between the injury asserted and the injurious conduct alleged." *Whale Fam. Invs., LP v. Concord01, LLC*, No. 24-1011, 2025 WL 752340, at *3 (10th Cir. Mar. 10, 2025) (citation modified). "Yet Article III does at least require

proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact." *Nova Health Sys.*, 416 F.3d at 1156. "When evaluating a plaintiff's standing at the stage of a motion to dismiss on the pleadings, . . . the trial . . . courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1152 (10th Cir. 2013) (internal quotation marks and citation omitted). "At the pleading stage, plaintiffs' burden to show the fairly traceable element of standing 'is relatively modest.'" *Whale Fam. Invs., LP*, 2025 WL 752340, at *3 (quoting *Bennett v. Spear*, 520 U.S. 154, 171, 117 S. Ct. 1154, 137 L. Ed. 2d 281 (1997)).

Relying on *Northern Laramie Range Alliance v. Federal Energy Regulatory Commission*, 733 F.3d 1030 (10th Cir. 2013), Defendants argue that Plaintiff cannot establish Article III standing because he cannot show that his injury is traceable to any action on their part. Referring to the NMGC, Defendants declare that, "Woldman's harm, if any, was caused by third-party actors not before the Court." Doc. 29 at 9. Citing again to *Northern Laramie*, Defendants contend that "binding authority precludes standing where an intervening third party's conduct causes the plaintiff's injury." *Id.* at 10.

The Court is not convinced that the decision in *Northern Laramie* requires dismissal of Plaintiff's case here. In *Northern Laramie*, a wind energy company established two wind energy projects and was able to sell the energy by certifying both projects as qualifying facilities. *Northern Laramie*, 773 F.3d at 1032. The plaintiffs in that case, the Northern Laramie Range Alliance, objected to the certification, asserting that it would increase electricity rates. After the Federal Energy Regulatory Commission rejected the objections, the Alliance appealed to the Tenth Circuit Court of Appeals, which dismissed the petition, explaining that,

> We can entertain the appeal only if the Alliance has established standing, which requires traceability and redressability. For both, the Alliance relies on increases in

6

electricity rates. But the wind projects have not been completed, [the energy company] has not found a buyer for the anticipated wind power, and we do not know whether sales of wind energy would increase or decrease a utility's costs. Even beyond these uncertainties, electricity rates depend on the actions of third parties, those of the utility and the state regulatory commission. With the multitude of uncertainties surrounding the effect of [the energy company's] certification or decertification on electricity rates, we conclude that the Alliance has not shown either traceability or redressability. We therefore dismiss the petition for lack of standing.

*Id.*

While Plaintiff's argument in support of establishing standing certainly involves the actions of the NMGC, the Court finds that Plaintiff has shown that, unlike the case in *Northern Laramie*, his injury is "fairly traceable to the challenged action of the defendant[s], and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (citation modified). More specifically, accepting the allegations in the Complaint as true, as the Court must at this stage, Plaintiff has shown a "substantial likelihood" that Defendants' conduct caused $100 million in higher gas costs to be passed on to Plaintiff and other customers. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654, 128 S. Ct. 2131, 170 L. Ed. 2d 1012 (2008). To summarize, Plaintiff alleges that "[w]hen Winter Storm Uri struck in February 2021, Keystone reneged on the guarantees inherent in firm storage contracts, severely limiting NMGC's withdrawal of its own gas in storage and ultimately depriving NMGC of a substantial portion of the gas it had priority rights to withdraw." Doc. 1 at 6. Because of this conduct and the ensuring shortage of natural gas needed to serve its customers, the NMGC was compelled to purchase natural gas at a much higher rate, incurring "over $100 million in extraordinary additional gas costs over the six days of Winter Storm Uri." *Id.* at 8. Ultimately, in accordance with New Mexico law, "NMGC requested and received approval from New Mexico regulators to recover [from its customers] more than $100

million in extraordinary gas costs, plus interest on the bank loan, over a 30-month period." *Id.* at 8-9.

Because Plaintiff's traceability argument rests on a discernable chain of causation, the Court finds that Plaintiff has established Article III standing. There is little uncertainty in what Plaintiff has alleged, and while a state utility is involved, the cause of the increased cost to customers is not speculative as it was in *Northern Laramie*. The "fairly traceable" requirement does not require a showing that a "defendant's actions are the very last step in the chain of causation." *Bennett*, 520 U.S. at 169. Additionally, "at the motion to dismiss stage, a plaintiff can satisfy the 'fairly traceable' requirement by advancing allegations which, if proven, allow for the conclusion that the challenged conduct is a 'but for' cause of the injury." *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe, New Mexico*, 993 F.3d 802, 814 (10th Cir. 2021) (citation omitted). That is what Plaintiff has done here – but for Defendants' actions during and related to Winter Storm Uri, as alleged by Plaintiff, Plaintiff and other NMGC customers would not have had to pay $100 million in higher gas costs.

Plaintiff has established Article III standing.

### 2. **Plaintiff Has Prudential Standing.**

Next, Defendants argue Plaintiff lacks prudential standing because "he attempts to raise the legal rights of NMGC rather than his own." Doc. 10 at 17. They argue that even if Plaintiff's allegations are true,

> the failure to deliver NMGC's gas to NMGC during the Storm is not Woldman's injury. If any entity has the right to assert that Kinder Morgan failed to deliver gas to NMGC during the Storm, it is NMGC. Woldman, a stranger to the contract, asserts no rights under NMGC's firm storage contract and makes no allegations that Kinder Morgan failed to deliver gas to him.

Doc. 10 at 19 (citation omitted).

8

Plaintiff argues he does have prudential standing for several reasons. He argues that New Mexico law "mechanically passes through the cost of gas to utility customers" via the Purchased Gas Adjustment Clause, so NMGC was "never going to suffer damage from KMI's wrongful conduct, and Mr. Woldman and his fellow customers were always going to be on the hook." Doc. 26 at 6-7. Plaintiff argues,

> NMGC would never have viable claims against Defendants because it was guaranteed full reimbursement. That's the deal with regulated utilities. In exchange for a monopoly, they get a guaranteed return on investment. Thus, NMGC would never be able to show cognizable damages from KMI's conduct, under tort or contract. The logic of the argument is that customers cannot sue Defendants because their rights supposedly belong to NMGC, depriving them of prudential standing. And NMGC cannot sue Defendants because they have no cognizable damages. That would be an absurd result, and no authority supports it.

*Id.* at 7. Plaintiff also argues the Court should deny Defendants' motion because Defendants do not refer to Plaintiff's Complaint and so do not argue that he has not met his pleading burden. *Id.* Additionally, Plaintiffs argue that privity of contract is not required here because,

> Federal courts handle thousands of cases in which plaintiffs lack privity of contract with defendants, notably in the context of torts, unfair practices, and antitrust… New Mexico gives an indirect purchaser downstream (e.g., a retailer or consumer who buys through an intermediary) statutory standing to sue for damages, such as overcharges from price-fixing or monopolistic practices. New Mexico Antitrust Act, NMSA 1978, § 57-1-3 (1891, amended through 1979) (providing statutory standing to purchasers whose business or property are injured "directly or indirectly"). Here, Defendants' wrongful conduct directly injured NMGC's customers. Even if the Court were to treat NMGC as an intermediary—like a retailer is to a consumer in the antitrust context—an indirect injury would not deprive Plaintiff of prudential standing. He would simply be like an indirect purchaser in antitrust.

Doc. 26 at 7-8. Plaintiff goes on to argue, "Plaintiff and the class are the very parties the NMUPA and tort law are intended to protect: consumers who bear the financial consequences of unfair or tortious conduct." *Id.* Finally, Plaintiff argues that the two cases relied on by Defendants are distinguishable. *See id.* at 9.

Prudential standing "embodies 'judicially self-imposed limits on the exercise of federal jurisdiction.'" *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11, 124 S. Ct. 2301, 2308, 159 L. Ed. 2d 98 (2004), *abrogated in part on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 S. Ct. 1377, 188 L. Ed. 2d 392 (2014). "[P]rudential standing encompasses 'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'" *Newdow*, 542 U.S. at 12 (citation omitted).

Here, Defendants only raise the issue of asserting another's legal rights. *See* Doc. 10 at 8-9. Defendants argue, "[i]f any entity has the right to assert that Kinder Morgan failed to deliver gas to NMGC during the Storm, it is NMGC," Doc. 10 at 19, and Plaintiff does not allege KMI failed to deliver gas to him. *Id.* In support of their argument, Defendants rely on cases like *G&S Holdings LLC v. Continental Cas. Co.*, 697 F.3d 534 (7th Cir. 2012) and *The Wilderness Society v. Kane County, Utah*, 632 F.3d 1162 (10th Cir. 2011). But neither of these decisions are applicable because they are readily distinguishable from this case. In *G&S Holdings*, the plaintiffs sought to recover for injuries suffered not by themselves but by a bankrupt company, and their claims were derivative of that company's insurance policies. *See G&S Holdings*, 697 F.3d at 541–42. And in *Wilderness Society*, the Tenth Circuit denied standing to environmental groups who sought to assert the property rights of the federal government. The circuit court analogized the plaintiffs to a neighbor who, while affected by a property dispute, had no independent legal right to assert the property owner's claims. *See Wilderness Society*, 632 F.3d at 1170.

In this case, as discussed above, Plaintiff alleges injuries caused by Defendants' conduct. Plaintiff alleges he was a customer of NMGC during the relevant period, Doc. 1 at 3, and NMGC

10

customers suffered a financial loss because of Defendants' conduct during Winter Storm Uri. *Id.* at 8-9. Under no fair reading of Plaintiff's Complaint can it be said that Plaintiff is seeking to vindicate the rights of others.

For these reasons, the Court finds Plaintiff has established prudential standing.

**B. Statute of Limitations**

### 1. The Applicable Statute of Limitations is the Four-year Limitation in Section 37-1-4.

Defendants argue that Plaintiff's three tort claims—negligence, economic duress, and interference with an economic advantage—and his unjust enrichment claim, are each barred by a three-year statute of limitations.[2] Doc. 10 at 27-29. Defendants contend that "New Mexico courts apply a three-year statute of limitations to tort claims, including interference and intentional misrepresentation, based on alleged economic damage." Doc. 29 at 16 (citation omitted). Plaintiff counters that "[s]ection 37-1-8 plainly applies to personal injury and defamation cases, not to tort claims alleging financial loss. Instead, the four-year statute of limitations – the catch-all provision – covers all of Mr. Woldman's claims." Doc. 26 at 26 (referring to NMSA 1978, § 37-1-4 as the "catch-all provision").

Section 37-1-8 of the New Mexico Statutes Annotated states:

> Actions must be brought against sureties on official bonds and on bonds of guardians, conservators, personal representatives and persons acting in a fiduciary capacity, within two years after the liability of the principal or the person for whom they are sureties is finally established or determined by a judgment or decree of the

---

[2] Defendants state that in a diversity action like this, "federal courts apply the choice-of-law rules of the state where the court sits. Generally, New Mexico courts apply New Mexico statutes of limitation as if they are procedural, even when applying the substantive law of another state." Doc. 10 at 26 (citations omitted). Plaintiff does not appear to dispute that the relevant statutes of limitations are those of New Mexico. *See* Doc. 26 at 26. Indeed, "[a] federal court sitting in diversity applies state law for statute of limitations purposes." *Burnham v. Humphrey Hosp. Reit Tr., Inc.*, 403 F.3d 709, 712 (10th Cir. 2005) (citing *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 109–110, 65 S. Ct. 1464, 89 L. Ed. 2079 (1945)).

court, and *for an injury to the person or reputation of any person, within three years*.

NMSA 1978, § 37-1-8 (emphasis added). Meanwhile, Section 37-1-4 describes "limitations of actions:"

> Those founded upon accounts and unwritten contracts; those brought for injuries to property or for the conversion of personal property or for relief upon the ground of fraud, and all other actions not herein otherwise provided for and specified within four years.

NMSA 1978, § 37-1-4.

The question regarding which statute of limitations applies to Plaintiff's claims is one grounded in state law. "[I]n diversity cases [the Court's] task is simply to ascertain and apply the state law." *Kokins v. Teleflex, Inc.*, 621 F.3d 1290, 1304 (10th Cir. 2010) (citation modified). "Where no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do." *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003). "To accomplish this objective, this court must begin with the plain language of the statute. If the statute is unambiguous and does not conflict with other statutory provisions, [courts] need look no further." *Parish Oil Co. v. Dillon Companies, Inc.*, 523 F.3d 1244, 1248 (10th Cir. 2008) (quoting *People v. Luther*, 58 P.3d 1013, 1015 (Colo. 2002)) (brackets and internal citations omitted). In interpreting these statutory provisions, the Court is "aided by classic canons of statutory construction," and "look[s] first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Faber v. King*, 2015-NMSC-015, ¶ 9, 348 P.3d 173.

Here, there does not appear to be a definitive decision from New Mexico appellate courts regarding whether the three-year statute of limitations referenced in Section 37-1-8 would apply to the type of economic injury alleged by Plaintiff. Thus, in predicting what the New Mexico

Supreme Court would do if faced with this question, the Court looks first to the statute itself. In doing so, the Court concludes, without much hesitation, that the plain language of the relevant portion of Section 37-1-8, which states, "Actions must be brought . . . for an injury to the person or reputation of any person, within three years," applies solely to cases involving personal injury and reputational injuries.[3]  The language is unequivocal, and to read the statute as Defendants urge the Court to do would require reading into the statute words that the legislature did not include. Additionally, the Court is mindful that New Mexico courts look to "[t]he nature of the right sued upon, and not the form of action or relief demanded, [to] determine[ ] the applicability of the statute of limitations to a cause of action." *Martinez v. Cornejo*, 2009-NMCA-011, ¶ 29, 146 N.M. 223, 208 P.3d 443 (citation modified). The nature of the violations alleged by Plaintiff here are not injuries to the person or the reputation of a person; instead, Plaintiff brings tort claims alleging financial loss. The Court thus agrees with Plaintiff that the claims he brings on behalf of himself and other similarly situated natural gas consumers are more appropriately governed by the catch-all provision of Section 37-1-4.

The cases relied on by Defendants do not dictate a different conclusion. Defendants rely, for instance, on *New Mexico Electric Service Company v. Montanez*, but in that case the three-year negligence statute of limitations was applied to claims involving the *personal injuries* a utility worker alleged he sustained while dismantling an electric system, not claims involving economic loss. 1976-NMSC-028, ¶ 1, 89 N.M. 278, 551 P.2d 634. A case from this district, *Hollis v. Farm Bureau Property & Casualty Insurance Company*, No. 1:24-CV-00720-WJ-GJF, 2025 WL 872557, at *7 (D.N.M. Mar. 19, 2025), is also unhelpful because there the court concluded sua

---

[3] A "personal injury" is an injury to one's body, mind, or emotions." *Personal injury*, Merriam-Webster, https://www.merriam-webster.com/legal/personal%20injury, last visited February 20, 2026.

sponte that the plaintiffs "[n]egligence claims are subject to a three-year statute of limitations," without further explanation or consideration of the plain language of the statute. Doc. 10 at 28.[4]

In sum, because the language of the statute could not be clearer and the Court is not swayed otherwise by the non-binding cases that assert otherwise, the Court concludes that Section 37-1-8's three-year statute of limitations does not apply because the claims here do not involve personal injuries. Instead, the four-year statute of limitations found in Section 37-1-4's "catch-all provision" shall apply to Plaintiff's three tort claims and his unjust enrichment claim.[5]

2. **Plaintiff's Claims Are Timely Under Section 37-1-4's Four-year Statute of Limitations**.

The next issue is whether Plaintiff's claims survive when applying the four-year statute of limitations. Defendants argue each of Plaintiff's claims is still barred because, "[e]ach of Woldman's claims is predicated on pre-Storm activities, which happened more than four years before his filing." Doc. 29 at 17. Plaintiff argues his claims are not barred because, among other reasons, "the earliest Mr. Woldman could have discovered the loss was June 15, 2021, when the June 2021 Order was entered and reimbursement under the PGAC began, and that date assumes constructive knowledge of the [New Mexico Public Regulation Commission] proceeding on the part of NMGC's customers." Doc. 26 at 27.

---

[4] Other non-precedential cases cited by Defendants are similarly unavailing and do not move the Court from its reading of the explicit language of Section 37-1-8 because they either involved reputational injuries, *see Printron, Inc. v. McGraw-Hill, Inc.*, 35 F. Supp. 2d 1325 (D.N.M. 1998), or the application of the three-year statute of limitations to economic injuries without explanatory analysis, *see Roberts v. Generation Next, LLC*, 853 F. App'x 235 (10th Cir. 2021) and *Waller v. Waller*, 656 F. App'x 901 (10th Cir. 2016).

[5] Defendants agree that a four-year statute of limitations applies to Plaintiff's New Mexico Unfair Practices Act claim. *See* Doc. 10 at 29 ("Woldman's claim under the NMUPA must be brought within the four-year statute of limitations accruing from the date when the underlying statements are made in the course of a transaction.").

"In cases applying § 37–1–4, New Mexico appellate courts have adopted a two-part accrual rule under which a claim accrues when: (1) plaintiff sustains actual injury and (2) plaintiff discovers, or through reasonable diligence should discover, the facts essential to the cause of action." *Porcell v. Lincoln Wood Prods., Inc.*, No. CIV-08-0617 MCA/LFG, 2010 WL 1541264, at *5 (D.N.M. Mar. 31, 2010) (citation omitted). Here, the Court agrees with Plaintiff that he has sufficiently alleged a loss and an actual injury at the time the New Mexico Public Regulation Commission ("NMPRC") entered its June 2021 Order for NMGC to recover costs related to Winter Storm Uri from NMGC customers and reimbursement under the PGAC began. As to the second part of the rule, Plaintiff, through reasonable diligence, should have discovered the facts essential to the causes of action also at the time the NMPRC entered its Order. Plaintiff filed suit on February 13, 2025, less than four years from June 2021 PRC Order.

The Court finds that Plaintiff's claims are not time-barred.[6]

## C. Venue is Appropriate in the District of New Mexico.

The next issue before the Court is whether venue in the District of New Mexico is proper. Doc. 10 at 19. Venue is proper if it is in ". . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2).

Defendants, arguing that venue is not proper in this district, cite to *Lewis v. Alternative Dining, Inc.*, No. CV 09-1065 KBM/DJS, 2009 WL 10706686 (D.N.M. Dec. 30, 2009), where the

---

[6] Section 37–1–4 is the "default statute of limitations for the NMUPA, which does not have its own statute of limitations." *Porcell*, 2010 WL 1541264, at *5. Section 37–1–4 must be read in conjunction with § 57–12–10(B), the NMUPA provision establishing a private cause of action for damages, in order to determine the facts essential to Plaintiff's NMUPA cause of action. *See id.* at *5 ("A plaintiff sustains an actual injury under the NMUPA each time the plaintiff 'suffers any loss of money ... as a result of [an unfair or deceptive trade practice].'") (quoting Section 57–12–10(B)).

court dismissed the case before it, determining sua sponte that venue was proper in Georgia, not New Mexico. The Court does not find *Lewis* useful here because in that case, both the alleged act of negligence and the ensuing injury all occurred in Georgia. *Id.* at *2. In contrast, in this case Plaintiff suffered his injury – having to pay the higher cost of natural gas – in New Mexico, and not in Texas, where Defendants claim venue is proper. The "location of the alleged damage or loss is 'significant' for purposes of analyzing the convenience of a particular venue[,]" and here the damage occurred as economic loss to Plaintiff and all the members of the class in New Mexico. *Emps. Mut. Cas. Co. v. Bartile Roofs*, Inc., 618 F.3d 1153, 1168 (10th Cir. 2010). Defendants emphasize that the caverns holding the gas at issue are located in Texas; however, even if the Court were to agree that this fact carries substantial weight in determining venue, it is well-settled that venue can be proper in more than one district and "is not limited [even] to the district with the most substantial events or omissions." *Id.* at 1165.[7]

The Court determines that venue is proper in the District of New Mexico.

**D. Issue Preclusion Does Not Bar Plaintiff's Claims.**

Defendants assert that Plaintiff's claims are barred by issue preclusion. The doctrine of issue preclusion, or collateral estoppel, fosters judicial economy by preventing the relitigation of "ultimate facts or issues actually and necessarily decided in a prior suit." *Shovelin v. Cent. New Mexico Elec. Co-op., Inc.*, 1993-NMSC-015, ¶ 10, 115 N.M. 293, 850 P.2d 996. Under this doctrine, parties are barred from relitigating decided issues when "(1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is

---

[7] Defendants also rely on *Combs Airways, Inc. v. Trans-Air Supply Company*, 560 F. Supp. 865 (D. Colo. 1983) to show that a Montana plaintiff could not recover from a tort committed in Colorado. Doc. 10 at 21 n.62. However, in *Combs Airways*, the court also stated venue may be proper "on the basis of the claim being brought in the district in which the claim arose," which is New Mexico here. 560 F. Supp. at 869.

different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation." *Id.* If all elements are met, the trial court must determine whether the party to be estopped had the full and fair opportunity to litigate the issue in the prior litigation. *Id.*

Defendants raise issue preclusion to argue that the NMPRC's administrative determination prevents Plaintiff from challenging the previously approved pass-through rates. Doc. 10 at 21. In support, Defendants rely on *Shovelin* for the proposition that "administrative adjudicative determinations may be given preclusive effect if rendered under conditions in which the parties have the opportunity to fully and fairly litigate the issue at the administrative hearing." Doc. 10 at 21 (citing *Shovelin*, 1993-NMSC-015, ¶ 12). As to the first element, Defendants argue that NMGC represented Plaintiff and its other customers' interests in the NMPRC proceeding, and that Plaintiff and NMGC are in privity by contract and statute. Doc. 10 at 22. For the second element, Defendants mention the difference between the NMPRC proceeding and the pending cause of action. *Id.* For the third element, Defendants frame the issue having been previously litigated as the approval of the pass-through rates. *Id.* For the final element, Defendants claim the cost of natural gas and the NMGC's authority to pass those costs on to consumers was actually litigated and determined in the NMPRC proceeding. *Id.* at 13-14.

In his response, Plaintiff notes that issue preclusion is an affirmative defense and Defendants bear the burden of pleading and proof on the matter. Doc. 26 at 17 (citing *Taylor v. Sturgell*, 553 U.S. 880, 907, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008)). Plaintiff argues that issue preclusion can be denied solely on the grounds that Defendant inappropriately shifts the burden onto Plaintiff. Doc. 26 at 17. Furthermore, Plaintiff states that should issue preclusion apply, it would cut against Defendants, as the NMPRC ultimately made a finding against Defendants for

17

its actions preventing NMGC from accessing its gas storage supply. *Id.* (citing NMPRC June 2021 Order, at 8). Plaintiff points out that Defendants failed to provide a complete version of the NMPRC's Order in their Motion, omitting the Order's adverse finding against Defendant. Doc. 26 at 17-18. Additionally, Plaintiff argues that State law controls in claims of issue preclusion and because New Mexico decisions have tended toward limiting the application of virtual representation in the context of pre-certification decisions, Plaintiff could not be considered a party in the prior administrative proceeding. *Id.* at 18-19 (citing *Ideal v. Burlington Res. Oil & Gas Co. LP*, 2010-NMSC-022, 148 N.M. 228, 233 P.3d 362).

The Court finds Defendants' argument regarding issue preclusion lacks merit. Considering the third element required for issue preclusion, the issue actually litigated at the NMPRC hearing differs from the issue litigated here. During the hearing, NMGC sought approval of a change to the method by which it could recover the increased cost of gas incurred during Winter Storm Uri. Doc. 10, Ex. 3 at 1-2. But Plaintiff in this suit is not challenging the process that was followed for recovering these costs, or the pass-through rates that were ultimately approved during the proceedings before the NMPRC. Instead, Plaintiff brings claims against Defendants for the financial loss he incurred as a result of Defendants' alleged unlawful removal and withholding of NMGC's gas. This issue was not actually litigated in the NMPRC proceeding.

Defendants nevertheless suggest that "Woldman could have intervened and attended and participated in the public hearing; could have testified; could have proposed a final order; could have attended and participated in public hearings." Doc. 29 at 14. Because these options were apparently available to Plaintiff, Defendant believes there was a full and fair opportunity to litigate the issue at the administrative hearing. *Id.* Defendant's argument is unpersuasive. While the NMPRC hearing could perhaps have been accessed by Plaintiff, there would have been no

18

opportunity for Plaintiff or NMGC to challenge the conduct of Defendants before and during Winter Storm Uri because that was not the purpose of the proceedings before the NMPRC.

Because the issues raised here differ from the issue actually litigated in the NMPRC proceeding and the hearing did not grant Plaintiff a full and fair opportunity to litigate issues regarding Defendants' conduct, the Court finds that Plaintiff's claims are not barred under the doctrine of issue preclusion.

### E. The Filed-Rate Doctrine is Not Applicable in this Case.

The next issue before the Court is whether the filed-rate doctrine bars Plaintiff's claim from being heard. In New Mexico the filed-rate doctrine is based on the concept that "any filed rate— that is, one approved by the governing regulatory agency—[is] per se reasonable and unassailable in judicial proceedings brought by ratepayers." *Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 886 (10th Cir. 2011) (quoting *Valdez v. State*, 132 N.M. 667, 54 P.3d 71, 74–75 (2002)). The Tenth Circuit has also held that "the purposes of the 'filed rate' doctrine[] [are] to prevent price discrimination and to preserve the role of agencies in approving rates." *Id.* at 890. The filed-rate doctrine was created to "keep courts from interfering with the ratemaking process and to ensure that similarly situated individuals pay the same rates for the same services." *Bhasker v. Kemper Cas. Ins. Co.*, 284 F. Supp. 3d 1191, 1234 (D.N.M. 2018).

Defendants argue that the filed-rate doctrine applies here since the rate was approved by the NMPRC, and as such Plaintiff cannot challenge it. Doc. 10 at 24. Defendants also argue that allowing the case to move forward and potentially award the Plaintiff monetary damages would give Plaintiff "a discriminatory natural gas rate." *Id.* at 26. Plaintiff argues that "the PGAC is a mechanism, not a rate" and that the Keystone facility is unregulated, so the filed-rate doctrine does not apply here. Doc. 26 at 21-23.

19

The Court finds that the filed-rate doctrine has no applicability in this case. Plaintiff is not challenging the rate of the natural gas itself, but instead Plaintiff's claims arise from the actions of Kinder Morgan and Keystone that led to the rise in gas costs. The Court agrees that Plaintiff's claims do not bring into conflict a rate set by a regulatory agency, because the claims instead involve the PGAC and the actions of Defendants, non-regulated companies. *See In re New Mexico Natural Gas Antitrust Litig.*, 1982 U.S. Dist. LEXIS 9452, 1982-1 Trade Cas. (CCH) P64,685, at *51-52 (D.N.M. January 26, 1982) (Bratton, J.) ("Because plaintiffs' claims do not bring into conflict a rate set by a regulatory agency and the federal antitrust laws, the filed-rate doctrine is not an appropriate defense to this action and is rejected by the Court as a matter of law.").[8]

For these reasons, the filed-rate doctrine does not preclude Plaintiff's claim.

### F. New Mexico Law Controls the Issues in this Case.

Finally, Defendants argue that the Court should apply Texas law to Plaintiff's claims. Doc. 10 at 30. The parties agree that New Mexico courts "follow the doctrine of *lex loci delicti commissi*—that is, the substantive rights of the parties are governed by the law of the place where the wrong occurred." *Id.* (citing *Valencia v. Colo. Cas. Ins. Co.*, 560 F. Supp. 2d 1080, 1085 (D.N.M. 2007)); *see also* Doc. 26 at 13-14. Under the doctrine of *lex loci delicti*, "[t]he place of the wrong . . . is the location of the last act necessary to complete the injury." *Torres v. State*, 1995-NMSC-025, ¶ 13, 119 N.M. 609, 894 P.2d 386 (citation modified).

Though Defendants contend the last act of the injury here occurred in Texas, the Court disagrees. Applying this doctrine to the claims and allegations here, the last act necessary to

---

[8] Defendants also cite to *TON Servs., Inc. v. Qwest Corp.*, 493 F.3d 1225 (10th Cir. 2007), for the proposition that courts cannot "adjudicate claims which would invalidate, alter or add to the terms of the filed tariff." Doc. 10 at 24. But Plaintiff here is not requesting that a rate be invalidated, altered or additions be made to the terms. Instead, Plaintiff is seeking damages.

20

complete Plaintiff's injury occurred in New Mexico when NMGC had to replace the missing gas at higher than normal prices and then Plaintiff and other NMGC customers later had to reimburse NMGC for the $100 million in extraordinary gas costs. Therefore, the substantive rights of the parties are governed by New Mexico, not Texas, law.

**G. The Court Declines to Dismiss Claims Based on Defendant's Argument That Plaintiff Has Failed to State Claims Under Texas Law**.

Defendants argue that, "[t]o the extent Woldman seeks recovery against KMI, which is KGS's indirect parent company, [Plaintiff] fails to allege negligent undertaking, which is required to hold parents liable for the torts of their wholly owned subsidiaries." Doc. 10 at 31. Defendants also assert that Plaintiff has failed to state a tort claim under Texas law, has failed to state a claim for intentional interference with an economic advantage, has failed to state a claim for unjust enrichment claim, and that the economic loss rule precludes Plaintiff's claims. Doc. 10 at 31-35. Defendants' arguments as to the deficiencies in these causes of action, however, are based almost entirely on Texas state law, which does not control here. The Court thus denies Defendants' motion as it relates to these claims.

**H. The Court Will Dismiss Plaintiff's Claims for Economic Duress and Violations of the New Mexico Unfair Trade Practices Act**.

Defendants argue that Plaintiff's claims for violations of the New Mexico Unfair Trade Practices Act and economic duress must be dismissed because Plaintiff has failed to state a viable claim under each of these causes of action. Doc. 10 at 34. As to the NMUPA claim, Defendants assert that the statute contains a relevant exemption, stating it does not apply "to actions or transactions expressly permitted under laws administered by a regulatory body of New Mexico." Doc. 10 at 37. However, neither the NMPRC nor another regulatory body "expressly permitted" the conduct that Plaintiff challenges here. Defendants nevertheless argue that even if this

exemption does not apply, "no Kinder Morgan defendant has directly communicated—truthfully or otherwise—with Woldman." Doc. 10 at 38. Defendants rely on *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co*., 170 F.3d 985, 994 (10th Cir. 1999) for the argument that misleading or deceptive communications must have been made directly to consumers in order to establish a valid claim under the NMUPA. Doc. 10 at 38. Defendants also argue Plaintiff's claims under the NMUPA have "timing problems" because Plaintiff "cannot rely on statements Kinder Morgan made *after* he entered into the Agreement with NMGC because they are not made in connection with the sale . . . of goods or services." *Id.*

As to Plaintiff's cause of action for economic duress, Defendants claim that "New Mexico [ ] only recognizes economic duress in the context of some agreement between the plaintiff and defendant which a plaintiff must allege resulted from duress." *Id.* at 34 (citing, e.g., *Richards v. Allianz Life Ins. Co. of N. Am*., 2003-NMCA-001, ¶ 30, 62 P.3d 320). But in this case, assert Defendants, "Woldman alleges no contract between Kinder Morgan and Woldman and therefore has failed to state a claim for economic duress." Doc. 10 at 35.

In their reply brief, Defendants point out that Woldman has failed to respond to their motion to dismiss his economic duress claim and the claims brought under the NMUPA. Doc. 29 at 8. Defendants assert that such a failure is dispositive and dismissal of these claims is required. The Court agrees. Although Plaintiff's argument that Texas law does not apply in this case is sufficient to overcome Defendant's contention that some of Plaintiff's claims should be dismissed based on Texas law, there is no excuse for Plaintiff's failure to respond to Defendants' motion concerning the NMUPA or economic duress, as Defendants relied on New Mexico law for their request for dismissal. *See C1.G on behalf of C.G. v. Siegfried*, 38 F.4th 1270, 1282 (10th Cir. 2022)

22

("The district court correctly dismissed Plaintiff's facial challenge here because he abandoned it by not addressing it in his response to Defendants' motion to dismiss.").

The Court will thus dismiss Plaintiff's claim for economic duress and the claims brought under the NMUPA without prejudice.

## IV.
## CONCLUSION

For all of the reasons explained here, the Court will deny Defendants' request to dismiss each of Plaintiff's claims, with the exception of Plaintiff's claim for economic duress and the claims brought pursuant to the NMUPA, which the Court will dismiss without prejudice.

**IT IS THEREFORE ORDERED** that Kinder Morgan, Inc. and Kinder Morgan Keystone Gas Storage, LLC's Motion to Dismiss Class Action Complaint (Doc. 10) is **DENIED** in part and **GRANTED** in part, as stated herein.

_____
HONORABLE DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE